# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN THE MATTER OF THE
INVESTIGATION OF THOMAS A.
JOSEPH, ACUMARK, INC. WILLIAM
D'ELIA, SAMUEL MARRANCA AND
JEANNE STANTON,

NO. 3:10-MC-0221

(JUDGE CAPUTO)

## **MEMORANDUM**

Before me is The Scranton Times L.P.'s Motion for Access to Certain Grand Jury Materials. (Doc. 1.) In particular, the motion seeks to unseal and provide access to the testimony before a federal grand jury by Thomas J. Joseph's ex-wife, Julie Lawlor, and his accountant, Raymond Zavada. Movant seeks this testimony in connection with a defamation and invasion of privacy suit against it by Thomas J. Joseph and three companies owned by him, to wit: Acumark, Inc., Airport Limousine and Taxi Service, Inc. and Airport Taxi, Limousine and Courier Service, Inc. The articles complained of purport to describe the scope of the investigation of these claimants as well as others.

At the non-jury trial in the Court of Common Pleas of Luzerne County before then Judge Ciavarella, Ms. Lawlor and Mr. Zavada testified about their grand jury appearances. Ms. Lawlor testified in a deposition that before the grand jury she was questioned about Mr. Joseph, Acumark, the Airport Limousine businesses and Mr. Joseph's relationship with

William D'Elia and Samuel Marranca.[1] She was asked questions about money laundering, tax evasion, sports gambling, drugs, prostitutes and money, and she discussed her appearance with Mr. Joseph. While her testimony was received in evidence, then Judge Ciavarella dismissed the testimony as not credible.

Mr. Zavada, while testifying that he had appeared before the grand jury once, had difficulty recalling the substance of his testimony there. The Movant contends that then Judge Ciavarella simply dismissed Mr. Zavada's testimony. Moreover, Movant contends Mr. Zavada's testimony is false.

At the conclusion of the case, then Judge Ciavarella, entered a verdict in the amount of $3.5 Million in favor of Joseph and related entities and against the Movant. The verdict was affirmed by the Pennsylvania Superior Court, but was vacated on appeal by the Pennsylvania Supreme Court, and the case was returned to Luzerne County for a new trial.

The Movant contends the requested grand jury testimony will prevent possible injustice in that (1) it will prevent Joseph from attacking Lawlor's testimony regarding the grand jury as not credible and (2) it will curtail Zavada from giving false testimony about his grand jury appearance. This Court is not in a position to evaluate Mrs. Lawlor's credibility as to her grand jury testimony. Moreover, it is not in a position to otherwise evaluate her testimony at the trial before then Judge Ciavarella. Further, the Pennsylvania Superior Court, which affirmed the verdict, determined that Movant failed to connect criminal conduct to Joseph and related entities in the articles it published inferring such. The Superior Court also concluded that the Movant never connected Joseph to a grand jury investigation for,

---

[1] DeElia was convicted of conspiracy to launder money and witness tampering. Marranca was indicted and convicted as well.

2

money laundering, drug trafficking, gun running or prostitution as apparently suggested by Movant's published articles. Similarly, the Superior Court found that Movant failed to make any connection between Joseph and related entities and organized crime in its subject articles. The Pennsylvania Supreme Court vacated the verdict because of the appearance of impropriety on the part of then Judge Ciavarella. It did not review the merits of the case.

This Court is left with trying to determine how significant the Lawlor testimony was and how credible it was when tested as trial. Likewise, the Court cannot determine that Mr. Zavada was untruthful as suggested by Movant. Again, what transpired at trial is unknown and determining his credibility is not feasible. Nevertheless, it is necessary to measure the need to unseal the requested grand jury testimony against the cloak of secrecy enjoyed by the grand jury. Will the disclosure of the testimony help Movant establish that the scope of the investigation of Joseph and related entities was as represented by the articles? If so, is it required to prevent an injustice? In order to reach a proper conclusion in this regard, it is necessary to examine the rationale for grand jury secrecy.

It is fundamental that to function properly, the proceedings of the grand jury must be secret. *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211 (1979). This need for secrecy must give way to the disclosure to a private litigant when "without the transcript a defense would be greatly prejudiced or that without references to it an injustice would be done." *U.S. v. Proctor & Gamble Co.*, 356 U.S. 677, 682 (1958). The burden of showing the resulting injustice without disclosure is on the party seeking disclosure. *Id.* The need must be "particularized" by the party seeking it. Fed. R. Crim P. 6(e). The reasons for secrecy of grand jury proceedings are (1) to prevent the escape of those against whom indictment is contemplated; (2) to insure freedom in the deliberation of the grand jury and prevent

3

persons subject to indictment or their friends from seeking to influence grand jurors; (3) to prevent subordination of perjuring and/or witness tampering; (4) to encourage free and full disclosure by those testifying before the grand jury; and, (5) to protect the innocent who may have been accused and come under investigation but who have been exonerated and/or not indicted. *Douglas Oil*, 441 U.S. at 219 n.10. Great injury can be done to one's good name in such circumstances.

Given that this grand jury investigation has long been concluded, the only factor implicated here is, ironically, the last one. Here, the Movant seeks the disclosure of grand jury testimony presumably to establish that the scope of the grand jury investigation of Joseph and related entities was, as it published, in the putative defamatory articles. Joseph and related entities were not indicted, so it follows that to seek to establish that he was investigated by the grand jury and the scope of the investigation by lifting the veil of secrecy, does exactly what the secrecy is meant to protect, viz the good name of someone who may have been investigated but not indicted. It is one thing for Movant to publish news regarding the investigation of a citizen; it is quite another to pierce the secrecy of the grand jury to prove the existence and/or scope of an investigation of one who was not indicted. The former is appropriate in the exercise of a free press. The latter violates the need for secrecy and is not the type of injustice which justifies disclosure of grand jury testimony. Moreover, the testimony sought may mention others who were not identified, and who, by virtue of mention in a grand jury proceeding, could have their reputation clouded, if not impugned. This too, is undesirable and would severely undercut part of the rationale for grand jury secrecy.

We should also note the stated particularized need of Movant is (1) to prevent Joseph from "unfairly attacking Lawlor's testimony regarding the grand jury as untruthful," and (2) prevent Zavada from providing false testimony regarding his grand jury appearance. (*See*, ¶ 24, Doc. 1.) As to Ms. Lawlor, movant does not describe how Joseph "unfairly" attacked Ms. Lawlor's testimony. Moreover, the only conceivable need for her grand jury testimony in this regard is to bolster her credibility. This is not a particularized need to prevent an injustice. Movant has a deposition from Ms. Lawlor which supports Movant's position. The case will be tried before a new judge, so presumably the taint which may have caused then Judge Ciavarella to dismiss her as not credible is eliminated. To use the grand jury testimony simply to corroborate her deposition and trial testimony does not rise to the level required to penetrate the secrecy barrier of the grand jury.

As to Mr. Zavada's testimony, Movant asserts the need for his grand jury testimony to prevent him from testifying falsely at trial. I have found no authority for the proposition that grand jury testimony should be made available for impeachment purposes. Further, Movant contends that Mr. Zavada testified he could not remember his grand jury testimony. To suggest this is untrue without demonstrating why or how does not meet the burden required to lift the veil of secrecy.

It must be remembered that a new judge will be hearing this case. The parties are in the same position of readiness they were in prior to the commencement of the first trial. There was no expressed need for grand jury testimony then, and the only reason to seek it now is to bolster the credibility of Ms. Lawlor and impeach that of Mr. Zavada. Notably, the rejection of the testimony of each of them at the first trial can be tied to the suggestion of partiality of then Judge Ciavarella toward plaintiff. This no longer exists. Additional discovery

and perhaps, better evidence is not a basis to compromise grand jury secrecy.

The motion will be denied.

An appropriate Order follows.

Date: July 30, 2010                         /s/ A. Richard Captuo
                                                     A. Richard Caputo
                                                     United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN THE MATTER OF THE INVESTIGATION OF THOMAS A. JOSEPH, ACUMARK, INC. WILLIAM D'ELIA, SAMUEL MARRANCA AND JEANNE STANTON, | NO. 3:10-MC-0221<br><br>(JUDGE CAPUTO) |

## ORDER

**NOW**, this 30th day of July, 2010, **IT IS HEREBY ORDERED** that The Scranton Times L.P.'s Motion for Access to Certain Grand Jury Materials (Doc. 1) is **DENIED**.

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge